UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Christopher M. Bartl, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.                                                                                  Case No. 16-cv-252 (JNE/KMM)
                                                                                              ORDER

Enhanced Recovery Company, LLC,

      Defendant.

This is a putative class action brought by Christopher M. Bartl against Enhanced Recovery Company, LLC (ERC), under the Fair Debt Collection Practices Act (FDCPA). Bartl claimed that ERC violated the Act by continuing collection activity without responding to his written dispute of a debt and by failing to inform a credit reporting agency that he disputed the debt. The case is before the Court on Bartl's Motion for Certification of a Class Action. For the reasons set forth below, the Court denies Bartl's motion.

## I.     BACKGROUND

Bartl incurred a debt with Sprint Corporation, which engaged ERC to act as its agent in collecting the debt. ERC contacted Bartl about the debt by letter dated March 18, 2015. ERC told Bartl that its "records indicate that [his] balance with Sprint remains unpaid" and that his "account has been placed with [ERC] for collection efforts." ERC included the names of the creditor and the original creditor, the amount of the debt, and other disclosures required by the FDCPA.

1

Bartl responded to ERC by letter dated March 26, 2015. In his letter, Bartl "demand[ed] validation of any debt" that ERC claimed he owed ERC. He asked for proof of the following: (1) ERC purchased or was assigned the debt; (2) the amount ERC paid for the debt; (3) the "full accounting of the transaction history"; (4) "[t]hat the debt is not time barred"; (5) the "[o]riginal contract between [him] and the original creditor"; and (6) the "[c]ontract between [him] and [ERC]." Bartl stated, "I do not believe I owe your company anything and dispute I owe your company anything." Bartl directed ERC "to stop all collection activity pursuant to the FDCPA."

According to its records, ERC received Bartl's letter on April 15, 2015. That day, ERC marked Bartl's account as disputed. According to the testimony of Jason Davis, ERC's senior vice president of compliance, ERC's policies at the time it received Bartl's letter called for ERC to obtain information about the debt from Sprint and mail the information to Bartl. ERC's policies did not call for it to terminate credit reporting. ERC reported an account to credit reporting agencies approximately 45 days after Sprint placed the account with ERC for collection.

Notwithstanding its policies, ERC did not obtain information from Sprint about Bartl's debt and did not respond to his letter. On May 3, 2015, ERC reported Bartl's debt to credit reporting agencies.

In July 2015, ERC revised its policies. According to Davis, ERC decided "to delete any disputed tradeline from credit bureaus." The revised policy applied to verbal disputes, written disputes, disputes that were previously reported, and disputes that had

not been reported. On July 19, 2015, ERC directed the credit reporting agencies to delete Bartl's account.

Bartl brought this action in early February 2016. The next month, he filed an amended complaint. In May, the Court denied ERC's motion to dismiss. In October, Bartl moved to certify the following class:

> All consumers nationwide who, within the dates between February 3, 2015 until June 1, 2015, on any Sprint account, received a collection letter from Defendant ERC in a form substantially similar or materially identical to Exhibit A (attached to Plaintiff's Amended Complaint), then subsequently disputed the debt pursuant to 15 U.S.C. § 1692g(b) with Defendant, then failed to receive any correspondence and/or documentation from Defendant verifying the disputed alleged debt, and thereafter had their alleged debt reported to the national credit reporting agencies.

## II.   DISCUSSION

"Federal Rule of Civil Procedure 23(a) 'sets out four threshold requirements that must be met before a plaintiff may file a lawsuit on behalf of a class of persons. Once those prerequisites have been met, the plaintiff must also establish that the class fits within one of three types of class actions listed in Rule 23(b).'" *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 998 (8th Cir. 2016) (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). The four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

3

Bartl asserted the proposed class satisfies Rule 23(b)(3), which states in part:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

"[A] party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)); *see Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 830 (8th Cir. 2016) ("A plaintiff bears the initial burden of showing that the class should be certified under Rule 23."). "A district court must undertake a rigorous analysis to ensure that the requirements of Rule 23 are met." *Sandusky Wellness Ctr.*, 821 F.3d at 998; *see Comcast*, 133 S. Ct. at 1432.

"Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector" shall, unless the information is contained in the initial communication or the consumer has paid the debt, "send the consumer a written notice" that contains the following information:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (2012); *see Haney v. Portfolio Recovery Assocs., L.L.C.*, 837 F.3d 918, 925 (8th Cir. 2016). Under certain circumstances, the debt collector must cease collection of the debt until certain information is obtained and mailed to the consumer:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) of this section unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

*Id.* § 1692g(b).

The class proposed by Bartl does not conform to § 1692g(b). The proposed class comprises each consumer who received, at certain times, a collection letter on a Sprint account from ERC like the one received by Bartl; disputed the debt with ERC under § 1692g(b); "failed to receive" from ERC any documentation verifying the debt; and experienced continued collection activity in the form of a report of the alleged debt to the national credit reporting agencies. Section 1692g(b) requires a debt collector to cease collection of a disputed debt "until the debt collector obtains verification of the debt or a

copy of a judgment . . . and a copy of such verification or judgment . . . is mailed to the consumer by the debt collector." Section 1692g(b) does not require a debt collector to cease collection of a disputed debt until the consumer receives verification of the debt. *Cf. Sandusky Wellness*, 821 F.3d at 996 ("Since *Ihrke*, this court has not addressed ascertainability as a separate, preliminary requirement. Rather, this court adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'").

Setting aside the proposed class's divergence from § 1692g(b), the Court concludes that Bartl has not satisfied his burden of demonstrating that class certification is appropriate. Bartl asserted that the proposed class comprises "1,141 consumers, easily satisfying the numerosity requirement for class certification." To support the assertion, he cited ERC's response to one of his interrogatories, which asked for the number of individuals within the proposed class. Subject to objections, ERC responded:

> [F]rom a national class size with Sprint accounts only between February 3, 2015 until June 1, 2015, ERC can determine that 1,141 accounts were mailed a collection letter from Defendant ERC in a form substantially similar or materially identical to Exhibit A and then subsequently had their account noted as disputed in ERC's records. ERC cannot determine whether the information ERC received from the individual was legally sufficient to constitute a "dispute" as defined by 15 U.S.C. [§] 1692g(b). Furthermore, ERC cannot determine whether the individual "failed to receive any correspondence and/or documentation from Defendant ERC verifying the disputed alleged debts." Each individual account would need to be analyzed to determine this information. ERC can confirm that after the account was noted as disputed in ERC's system, the 1,141 accounts referenced above subsequently had their account reported to the national credit reporting agencies by ERC. A manual review of each case would need to be done to verify the precise number of potential class members.

Of the 1,141 accounts, the number of individuals who "failed to receive" from ERC verification of the debt is unknown. ERC's policies called for ERC to respond to a dispute by obtaining information about the debt from Sprint and mailing the information to the individual. If ERC generally complied with its policies, ERC mailed verification to a substantial number of the individuals associated with the 1,141 accounts. Bartl has not offered the Court any basis to determine how many accounts were reported without ERC obtaining information about the debt from Sprint and mailing the information to the consumer. He has not offered the Court any basis to determine how many accounts were reported without receipt by the consumer of verification of the debt. On this record, the Court concludes that Bartl failed to satisfy his burden of demonstrating that the class is so numerous that joinder of all members is impracticable. *See Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit."); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356-58 (3d Cir. 2013) ("Speaking more generally, where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone.").

Having concluded that Bartl did not demonstrate that Rule 23(a)'s numerosity requirement is satisfied, the Court need not consider the remaining requirements of Rule 23. The Court denies Bartl's Motion for Certification of a Class Action.

## III.     CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Bartl's Motion for Certification of a Class Action [Docket No. 32] is DENIED.

Dated: January 5, 2017

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge
