# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CHRISTOPHER M. BARTL,

    Plaintiff,[1]

  v.                                     Case No. 16-CV-252 (JNE/KMM)
                                          **ORDER**

ENHANCED RECOVERY COMPANY,
LLC,

    Defendant.

Plaintiff Christopher M. Bartl brought claims against Defendant Enhanced Recovery Company, LLC ("ERC") for unlawful debt collection activities in violation of the Fair Debt Collection Practices Act ("FDCPA"). Bartl primarily claims that ERC violated 15 U.S.C. § 1692g(b) when ERC continued to collect a debt, without verifying the debt, after Bartl disputed the debt by letter. ERC moved to dismiss on the theory that Bartl lacks standing to bring this action for want of a concrete injury in fact. (*See* Dkt. No. 46.) Bartl moved for summary judgment. (*See* Dkt. No. 49.) For the reasons that follow, the Court denies ERC's motion to dismiss and grants summary judgment in Bartl's favor on the § 1692g(b) claim.

## I. BACKGROUND

Bartl had a personal phone account with Sprint. (*See* Deposition of Christopher M. Bartl ("Bartl Dep.") 21:7-22:17, Dkt. No. 41-1.) Sprint engaged ERC to collect a $1,024.88 balance on the account (the "Sprint debt"). (*See* Dkt. No. 41-1 at 34.) ERC, in a collection notice dated March 18, 2015, informed Bartl that Sprint placed the account with ERC for collection. (*See id.*)

---

[1] The caption is amended to omit the designation that Bartl's action is "on behalf of himself and all others similarly situated," in order to properly reflect the current nature of this non-class action. *See Datz v. Whitworth*, 144 F.R.D. 426, 427 n. 4 (N.D. Ga. 1992).

Prior to receiving ERC's collection notice, Bartl was in the process of improving his credit. (*See* Bartl Dep. 45:7-46:22.) He engaged a third party to help him achieve this goal. (*See id.* at 46:11-22.) After Bartl received the collection notice from ERC, the third party sent a dispute letter to ERC on Bartl's behalf. (*See id.* at 25:3-5, 68:2-11; Dkt. No. 41-1 at 36.) ERC received the letter and recorded it in its system as a dispute letter on April 15, 2015. (Deposition of James Davis ("Davis Dep.") 37:6-9, Dkt. No. 37-2; Dkt. No. 42-3 at 2.)

Despite receiving the dispute letter and treating it as such, ERC did not investigate or verify the debt. (*See* Davis Dep. 45:22-46:1, 52:22-24.) ERC reported the debt to credit agencies Experian, TransUnion, and Equifax on May 3, 2015. (*See id.* at 52:22-24; Dkt. No. 42-3 at 2.) These agencies added the debt to Bartl's credit reports. (*See, e.g.*, Dkt. No. 41-1 at 41.) Due to ERC's reporting, Bartl suffered irritation and anxiety; he worried about his ability to obtain a mortgage to purchase a home. (*See* Bartl Dep. 70:14-73:1, 74:21-77:23.) The reporting also delayed Bartl's process of obtaining a mortgage, (*see id.* at 51:19-53:1), and negatively affected his credit score, (*see* Dkt. No. 41-1 at 49, 52-53, 56-57, 60). ERC later reported the debt deleted on July 19, 2015. (Davis Dep. 52:25-53:2; Dkt. No. 42-3 at 2.)

Bartl claims that ERC violated the FDCPA when it reported the Sprint debt without verifying the debt (under 15 U.S.C. § 1692g(b)), failed to inform Equifax that Bartl disputed the Sprint debt when ERC nevertheless unlawfully reported the debt (under 15 U.S.C. § 1692e and § 1692e(8)), and used unfair and unconscionable means to collect or attempt to collect the Sprint debt (under 15 U.S.C. § 1692f). (*See* Am. Compl. ¶¶ 17-20, 57-60, Dkt. No. 8.)

## II. DISCUSSION

ERC filed a motion to dismiss under Rule 12(b)(1), asserting that Bartl lacks standing to bring this action. (*See* Dkt. No. 46.) One day later, Bartl filed a motion for summary judgment on

all claims. (*See* Dkt. No. 49.) The Court heard argument from the Parties on both motions, (*see* Dkt. No. 57), and addresses both motions herein.

### A. Motion to Dismiss under Rule 12(b)(1) for Lack of Standing

ERC makes a factual challenge to the Court's subject-matter jurisdiction and argues that Bartl lacks standing to pursue this action. (Defendant's Memorandum in Support of Its Motion to Dismiss ("Def. Dismiss Br.") 5, Dkt. No. 48.) In a factual challenge, the Court evaluates subject-matter jurisdiction by considering matters outside the pleadings, such as testimony and affidavits. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015). The Court does not accept the facts alleged in the complaint as true, and the plaintiff bears the burden of establishing subject-matter jurisdiction. *Id.* at 915, 917.

In order for the Court to exercise its judicial power, Bartl (as plaintiff) must establish the "irreducible constitutional minimum" of standing, which is shown if he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of [ERC], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). ERC primarily argues that Bartl lacks an injury in fact. (*See* Def. Dismiss Br. 9-19; Defendant's Reply Memorandum in Support of Its Motion to Dismiss ("Def. Dismiss Reply Br.") 3-5, Dkt. No. 56.) To show injury in fact, Bartl must have suffered "an invasion of a legally protected interest that is concrete and particularized." *Spokeo*, 136 S. Ct. at 1548. (internal quotation marks omitted). Such an injury must be "actual or imminent, not conjectural or hypothetical." *Id.*

Prior to ERC's reporting, Bartl had other disputed debts on his credit report. (*See, e.g.*, Bartl Dep. 58:9-59:10, 62:2-17, 63:2-64:9.) He previously applied for a mortgage as early as late 2014, but was told that he did not qualify for a mortgage at that time. (*Id.* at 45:7-46:6.) Bartl

sought help improving his credit score and decided to dispute certain debts. (*See id.* at 46:11-22, 51:10-18.) ERC's reporting occurred during these efforts. (*See id.* at 51:19-52:1.) Bartl was told he had to wait to apply for a mortgage after ERC reported the Sprint debt because it would be more difficult for him to get approved with the disputed Sprint debt on his credit report. (*See id.* at 52:2-21.) This caused Bartl to suffer emotional distress in the form of frustration, anxiety, and irritation. (*See id.* at 70:14-73:1.) He further suffered a "meltdown" that included "crying, shaking, [and] convulsing" due to the pressure caused by ERC's credit reporting and his concerns that he would not close on a home.[2] (*Id.* at 74:21-77:23.)

    The emotional distress Bartl suffered constitutes concrete and particularized injury in fact sufficient to meet the "irreducible constitutional minimum" of standing. *See Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142 (9th Cir. 2010) (holding that "generalized anxiety and stress" was sufficient to confer standing); *Potocnik v. Carlson*, No. 13-CV-2093 (PJS/HB), 2016 WL 3919950, at *3 (D. Minn. July 15, 2016) ("There is no doubt that emotional distress is an injury in fact . . . ."); *Davis v. Astrue*, 874 F. Supp. 2d 856, 863 (N.D. Cal. 2012) ("[M]any courts have found that emotional distress may constitute an injury-in-fact for purposes of standing."); *cf. Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017) (stating that, "[f]or standing purposes, a loss of even a small amount of money is ordinarily an 'injury'"). This injury is fairly traceable to ERC's conduct because it resulted from that conduct. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009). And the injury is redressable under the FDCPA. *See Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1041 (D. Minn. 2010) ("A consumer who has suffered emotional distress has suffered [actionable damage under the

---

[2] The meltdown occurred on September 23, 2015, after ERC reported the Sprint debt deleted. At the time, however, Bartl was unaware that the debt had been deleted. (Bartl Dep. 76:19-77:1.)

FDCPA] even if the emotional distress was not severe."), *aff'd,* 413 F. App'x 925 (8th Cir. 2011) (unpublished). Therefore, Bartl has standing.

**B. Summary Judgment**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the non-movant. *Liberty Lobby,* 477 U.S. at 255.

*1. The § 1692g(b) Claim*

In order to show that ERC violated § 1692g(b), Bartl must prove:

> (1) that he is a consumer; (2) that [ERC] is a debt collector who contacted him in an attempt to collect a debt; (3) that he duly notified [ERC] in writing that he disputed the debt; and (4) that [ERC] resumed or failed to cease debt-collection efforts without first (a) obtaining verification of the debt or a copy of a judgment and (b) mailing a copy of the verification or judgment to [Bartl].

*Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1001 (8th Cir. 2011).

*a. Consumer*

ERC argues that Bartl has not provided evidence that he is a consumer or that ERC is a debt collector. (*See* Defendant's Memorandum in Opposition to the Motion for Summary Judgment ("Def. Summ. J. Br.") 6, Dkt. No. 53.)

The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . primarily for personal, family, or household purposes." § 1692a(5).

There is no genuine dispute that Bartl is a consumer who was allegedly obligated to pay a personal debt. Bartl is a natural person; he was deposed in person. (*See* Bartl Dep.) ERC's collection notice alleged Bartl to be obligated to pay the Sprint debt. (*See* Dkt. No. 41-1 at 34-35.) And the Sprint debt relates to a personal phone account. (*See* Bartl Dep. 21:24-22:14.)

### b. Debt Collector

There is also no genuine dispute that ERC is a debt collector who contacted Bartl in an attempt to collect the Sprint debt. ERC's "collection notice" stated that the Sprint debt was "placed with Enhanced Recovery Company, LLC for collection efforts" and that "[t]his is a debt collector attempting to collect a debt." (*See* Dkt. No. 41-1 at 34-35.)

### c. Dispute Letter

ERC argues that because Bartl did not send the alleged dispute letter himself, the letter did not trigger § 1692g(b)'s protections prohibiting further collection efforts until the debt is verified to the consumer. (*See* Def. Summ. J. Br. 9-10.) Bartl responds that the letter was sent by someone on his behalf. (*See* Plaintiff's Reply Memorandum in Support of His Motion for Summary Judgment ("Pl. Summ. J. Reply Br.") 15, Dkt. No. 55.)

In order to activate the protections in § 1692g(b), the FDCPA requires a "consumer" to "notif[y] the debt collector in writing . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor." § 1692g(b). In this case, a third party sent the letter to ERC on Bartl's behalf after Bartl engaged the third party for

6

assistance with his credit. (*See* Bartl Dep. 25:3-5, 68:2-11.) Because the letter was sent with Bartl's authorization, the letter qualifies as a dispute letter for the purposes of § 1692g(b). *See Sayles v. Advanced Recovery Sys., Inc.*, 206 F. Supp. 3d 1210, 1213 n.4 (S.D. Miss. 2016).

Next, ERC argues that Bartl's dispute letter did not effectively dispute the Sprint debt because the letter only denies that Bartl owes ERC money, not that Bartl owes Sprint—the holder of the debt. (*See* Def. Summ. J. Br. 10-11.) Bartl responds that ERC treated it as a dispute letter internally. (*See* Pl. Summ. J. Reply Br. 14-15.)

FDCPA liability turns on the application of the "unsophisticated consumer" standard. *Nelson v. Midland Credit Mgmt., Inc.*, 828 F.3d 749, 752 (8th Cir. 2016). This standard requires the Court to evaluate compliance with the FDCPA through the eyes of consumers with below-average intelligence. *See Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437 (8th Cir. 2015). Under this standard, consumers are not required "to assert their rights in legally precise phrases." *Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 274 (7th Cir. 2014). Accordingly, a dispute letter is effective to trigger § 1692g(b)'s protections even if the letter fails to perfectly state that a debt is disputed. *See id.* A dispute letter is sufficient if it puts a debt collector on notice that the consumer is invoking § 1692g(b)'s protections. *See id.*; *see also Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 773 (7th Cir. 2003) ("It is . . . enough to put debt collectors on notice [that an FDCPA protection applies].").

Bartl's letter sufficiently disputed the Sprint debt so as to trigger § 1692g(b)'s protections. The letter references ERC's collection notice by number, states that Bartl "dispute[s]" the debt, and demands "validation" of the debt. (Dkt. No. 41-1 at 36.) It requests documents showing the creation of the debt and documents entitling ERC to collect on the debt. (*Id.*) The letter also demands that ERC "stop all collection activity pursuant to the FDCPA"

7

including, for example, "furnish[ing] any information to [Bartl's] credit report(s)." (*Id.*) These demands were sufficient to put a sophisticated debt collector like ERC on notice that Bartl was disputing the debt and invoking § 1692g(b)'s protections.[3] To wit, ERC itself interpreted the letter as a dispute letter. (*See* Davis Dep. 37:3-5, 45:7-46:1.) Thus, upon receipt of the letter, ERC had to verify the debt to Bartl before engaging in further collection efforts.

d. Further Collection Efforts

ERC does not dispute that it reported the Sprint debt to credit reporting agencies, without verifying the debt, after ERC received Bartl's dispute letter. (*See, e.g.*, Def. Summ. J. Br. 2-3, 9-11.) Rather, ERC argues that it did not violate § 1692g(b) because reporting a debt to credit reporting agencies is not a collection effort. (*Id.* at 11-12.) Bartl argues that reporting is a prohibited collection effort, citing the Court's previous holding in *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1034-36 (D. Minn. 2010). (*See* Plaintiff's Memorandum in Support of His Motion for Summary Judgment ("Pl. Summ. J. Br.") 6-9, Dkt. No. 51.)

*Edeh* held that credit reporting is a collection effort. *See* 748 F. Supp. 2d at 1036 (citing *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 304 n. 5 (6th Cir. 2008) (unpublished); *Quale v. Unifund CCR Partners*, 682 F. Supp. 2d 1274, 1279 (S.D. Ala. 2010); *Semper v. JBC Legal Grp.*, No. 04-CV-2240L, 2005 WL 2172377, at *4 (W.D. Wash. Sept. 6, 2005)). Central to the decision was FTC guidance stating that "debt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." *Id.* (citing Staff Opinion Letter from John F. LeFevre, Attorney, Federal Trade Commission, Office of the

---

[3] Although Bartl's letter explicitly denies that Bartl owes ERC—rather than Sprint—money, the letter does not concede or imply that Bartl accepts that he owes Sprint on the debt. (*See* Dkt. No. 41-1 at 36.) The most that can be inferred from the focus on ERC is that the letter is a response to ERC's collection notice requesting payment directly to ERC. (*See id.* at 34.) To require Bartl to anticipate and reference the exact arrangement between ERC and Sprint when disputing the debt would contradict the unsophisticated consumer standard.

Secretary, to Robert G. Cass, Compliance Counsel, Commercial Financial Services (Dec. 23, 1997), 1997 WL 33791232, at *1). That guidance remains persuasive; for example, James Davis, an ERC employee, acknowledged in his deposition for this case that reporting debts is said to assist in collection efforts. (*See* Davis Dep. 35:3-36:22.) Regardless of ERC's intent in reporting the Sprint debt, the reporting constitutes a collection effort in violation of § 1692g(b).[4] *See Edeh*, 748 F. Supp. 2d at 1035-36; *see also McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014) (stating that related reasoning in *Edeh* is "persuasive").

In summary, there are no genuine disputes as to any material facts, and the record shows that Bartl is entitled to judgment as a matter of law on his § 1692g(b) claim. However, because Bartl has not provided evidence or argument as to the amount of damages attributable to the § 1692g(b) violation, the Court reserves the issue of damages for future disposition.

2. *The § 1692e and § 1692e(8) Claims*

Bartl's claims under § 1692e and § 1692e(8) require that he prove, among other things, that ERC made a "false, deceptive, or misleading misrepresentation . . . in connection with the collection of any debt." § 1692e. Bartl has not provided evidence that ERC made any misrepresentations in connection with its collection activities. For example, the record does not show that ERC failed to communicate that the Sprint debt was disputed when ERC reported the debt to Equifax, as is alleged. (*See* Am. Compl. ¶¶ 18-19, 58-59.) Rather, the record shows that ERC reported to Equifax that the Sprint debt was disputed—as it did to TransUnion and Experian. (Davis Dep. 20:21-21:16.) Therefore, Bartl is not entitled to summary judgment on his § 1692e and § 1692e(8) claims.

---

[4] ERC's report deleting the debt is not actionable, however, because deletion, standing alone, is not a tool used to persuade consumers to pay. *See Carlisle v. Stellar Recovery, Inc.*, --- F. Supp. 3d ---, No. 15-CV-918 (EGS), 2016 WL 6426363, at *3 (D.D.C. Oct. 28, 2016).

### 3. The § 1692f Claim

Bartl alleged his § 1692f claim as an alternative to relief. (*See* Am. Compl. ¶¶ 20, 60; *see also* Pl. Summ. J. Br. 9.) A general claim under § 1692f fails as a matter of law if it is not premised on conduct independent of that which forms the basis of other FDCPA violations. *See Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1164 n.3 (D. Minn. 2013); *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn. 2008). Because the Court finds that ERC violated § 1692g(b), and Bartl's § 1692f claim is based on the same conduct as the § 1692g(b) claim, Bartl is not entitled to summary judgment on the § 1692f claim.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Clerk of Court is directed to amend the Court's docket to remove the designation "on behalf of himself and all others similarly situated" as to Plaintiff Christopher M. Bartl.

2. Defendant Enhanced Recovery Company, LLC's motion to dismiss under Rule 12(b)(1) [Dkt. No. 46] is DENIED.

3. Plaintiff Christopher M. Bartl's motion for summary judgment [Dkt. No. 49] is GRANTED IN PART and DENIED IN PART. Summary judgment is granted in favor of Plaintiff Christopher M. Bartl as to Defendant Enhanced Recovery Company, LLC's liability under 15 U.S.C. § 1692g(b), as set forth in this Order. Summary judgment is not granted with respect to the issue of damages on this claim.

Dated: May 3, 2017.

s/Joan N. Ericksen<br>
JOAN N. ERICKSEN<br>
United States District Judge